UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TERA CUNNINGHAM,

      Plaintiff,

v.

TOWN OF ELLICOTT, et al.,

      Defendants.

**Hon. Hugh B. Scott**

04CV301

(CONSENT)

**Order**

  Before the Court is plaintiff's motion, pursuant to Fed. R. Civ. P. 59(a) and (e), for a new trial of her retaliation claims under Title VII, the First Amendment, and New York State Human Rights Law (Docket No. 134[1]). She is not seeking a new trial as to the other claims alleged in this action (such as her sexual harassment claims). The parties consented to proceed before the undersigned as Magistrate Judge (Docket No. 28, May 2, 2005) and trial of this matter was held on April 3, 2007 (Docket Nos. 108, 117-31), with a jury verdict (Docket No. 132) and judgment entered against plaintiff (Docket No. 133).

  The briefing schedule for this motion had responses due on May 18, 2007, and any reply was due by June 1, 2007, with the motion deemed submitted (without oral argument) on June 1, 2007 (Docket No. 137).

---

[1] In support of this motion, plaintiff filed her attorney's declaration with exhibit, Docket No. 136; and memorandum of law, Docket No. 135. In opposition, defendants filed their attorney's declaration, Docket No. 138; memorandum of law, Docket No. 139; and certificate of service, Docket No. 140.

BACKGROUND

This is a Title VII sexual harassment and retaliation action by plaintiff, a former patrol officer for defendant Town of Ellicott, New York, against the Town, the Town's Police Department, Police Chief William Ohnmeiss, and Town Supervisor Patrick Tyler.  Plaintiff was in the middle of her probationary period as a full-time officer in the Town of Ellicott Police Department when Chief Ohnmeiss, on March 5, 2004, told her that she was terminated, effective March 19, 2004.  Plaintiff requested an interview with the Town of Ellicott Board on March 8, 2004, and then filed a charge with the Equal Employment Opportunity Commission ("EEOC") on March 10, 2004 (see Pl. Tr. Ex. 14A).  At the next regular Town Board meeting, on March 15, 2004, plaintiff was not given the interview with the Board.  The Town Board met in executive session to discuss plaintiff's termination and, in regular session, confirmed Ohnmeiss's action in terminating her (see Pl. Tr. Ex. 41, Town Board minutes, Res. No. 55-04, Mar. 15, 2004) and rejected a resolution to reinstate plaintiff (id., Res. No. 56-04, Mar. 15, 2004).

Plaintiff amended her Complaint in 2004 (Docket Nos. 10 (motion for leave to amend), 17 (Amended Complaint)).  In her Amended Complaint, plaintiff alleged five causes of action, namely claims under Title VII, 42 U.S.C. § 2000e, and the New York State Human Rights Law, N.Y. Exec. Law §§ 290, et seq., for sexual harassment by defendant Chief Ohnmeiss, for a pattern of unlawful sexual harassment and creation of a hostile work environment.  Plaintiff alleged that defendants retaliated against her for exercising her First Amendment rights in two instances that led to her termination.  Also, she claimed that authorization of her termination by the Town of Ellicott Board was given despite her pending charge before the EEOC.  She also alleged retaliation by the defendants under Title VII and under the New York State Human

Rights Law and violation of plaintiff's First Amendment and Equal Protection Clause (sexual harassment) rights. She also alleged employment discrimination under both Title VII and the state's Human Rights Law (see generally Docket No. 17, Am. Compl.).

In her Amended Complaint, she alleged facts about Daryl Brautigam's investigation of her termination (Docket No. 17, Am. Compl. ¶¶ 78-79, 70), noting that defendants published Brautigam's report (hereinafter the "Brautigam report") in several newspapers (id. ¶ 79). She noted that the March 15, 2004, Town Board meeting was televised (id. ¶ 73), but that meeting (in addition to confirming plaintiff's termination) authorized appointing Brautigam to conduct the investigation (see Pl. Tr. Ex. 41, Town Board minutes, Res. No. 57-04, Mar. 15, 2004). Plaintiff did not allege in her pleadings a separate claim for intentional infliction of emotional harm from the public dissemination of the Brautigam report (cf. Docket No. 17, Am. Compl. ¶ 79), although for each of her claims plaintiff alleged generally emotional anguish and emotional distress (see id. ¶¶ 86, 91, 101, 108, 111). For her fifth cause of action for retaliation under § 1983, plaintiff claims that, as a result of the misuse of authority and power by defendants, plaintiff underwent "the humiliation and indignities resulting from the sexually hostile environment she suffered, her public retaliatory termination from the Ellicott Police Department as the only female full time police officer after she filed her charge of discrimination with the EEOC in retaliation for the exercise of free speech . . . , and was caused and will continue to undergo and endure severe mental anguish, humiliation and economic hardship as a consequence thereof" (id. ¶ 116; see also id. ¶ 122).

After a ten-day trial, the jury returned a verdict of no cause of action for all of plaintiff's claims. Judgment was entered on April 19, 2007 (Docket No. 133).

*Plaintiff's Motion for New Trial*

Plaintiff now timely moves for a new trial (Docket No. 134, motion of April 24, 2007). Plaintiff contends that the jury's verdict was inconsistent, that the jurors inaccurately answered one question in the negative and then avoided the subsequent question (Docket No. 135, Pl. Atty. Decl. ¶ 6). The jurors were asked in the special verdict regarding the Title VII retaliation claim:

> "Part III:   RETALIATION UNDER TITLE VII
>
> "17.   Was the plaintiff, who engaged in conduct protected by Title VII in filing her EEOC charge, subjected to an adverse employment act at the time, or after, the protected conduct took place?
>      "Answer 'yes' or 'no'
> "Answer: _____
>      "If your answer to question no. 17 is 'yes,' answer question no. 18. If your answer to question no. 17 is 'no,' go on to Part IV and do not answer any further questions in this Part III."

(Docket No. 132; see Docket No. 136, Pl. Atty. Decl. ¶ 6). The jurors answered this question "no" and did not proceed to answer question 18 (Docket No. 132; Docket No. 136, Pl. Atty. Decl. ¶ 6). Question 18 asked

> "18.   Did defendants take an adverse employment action against plaintiff because of plaintiff's protected conduct?
>      "Answer 'yes' or 'no'
> "Answer: _____
>      "If your answer to question no. 18 is 'yes,' answer question no. 19. If your answer to question no. 19 is 'no,' go on to Part IV and do not answer any further questions in this Part III."

(Docket No. 132; see Docket No. 136, Pl. Atty. Decl. ¶ 8.) Plaintiff strenuously contends that the correct answer to question 17 was yes, that evidence showed that plaintiff was terminated on March 5, 2004, and was ratified by the Town Board on March 15, 2004 (Docket No. 136, Pl. Atty. Decl. ¶ 7). Thus, the jurors did not address whether the termination, an adverse

4

employment action as a matter of law, was causally related to plaintiff engaging protected activity (id. ¶¶ 9, 10-11).  For this error, plaintiff seeks a new trial under Rule 59(a).

She also seeks a new trial under Rule 59(e) to alter or amend the judgment, contending that the verdict on plaintiff's Title VII and New York State Human Rights Law retaliation claims were against the weight of the evidence (id. ¶¶ 17-25).  Plaintiff points to the protected activity of her filing the EEOC charge days before the Town Board meeting that ratified her termination (id. ¶¶ 18-19).  Plaintiff had requested an interview with the Town Board on March 8, 2004 (id. ¶ 20).  Plaintiff argues that defendant Town Supervisor Tyler lied when he testified that he granted plaintiff and her counsel an interview with the appointing authority (that is the Town Board).  A portion of the Town Board proceedings for March 15, 2004, published to the jury depicted a discussion and eventual ratification of plaintiff's termination (id. ¶ 21).  The audio recording of the meeting did not depict plaintiff being given an opportunity to say anything to the Town Board (id. ¶ 22).  The Board then declined to reinstate plaintiff, claiming that there would be ramifications by doing that (id. ¶ 23).  Prior to Chief Ohnmeiss' action to terminate plaintiff, she had "acceptable" evaluations from supervisors within the department (id. ¶ 25).

Plaintiff next claims that the verdict against her First Amendment retaliation claim was also against the weight of the evidence (id. ¶ 26).  Here, plaintiff claimed that she was retaliated against for speaking out against the apparent preferential treatment given to defendant Tyler's son, Josh, who was stopped by another Town of Ellicott police officer for a traffic offense one week before Patrick Tyler's re-election.  Josh Tyler was found to possess cocaine but he was never charged for drug possession and plaintiff objected to the manner in which his case was prosecuted.  Meanwhile, Chief Ohnmeiss (then probationary as chief) was made permanent chief

and Tyler was re-elected supervisor. Sometime later when plaintiff confronted Chief Ohnmeiss on this double standard, Ohnmeiss stated that he would not let Josh Tyler ruin Patrick Tyler's career. (Id. ¶ 27.) Two months later, plaintiff was terminated (id. ¶ 28). She concludes that there was sufficient evidence for the jury to conclude that her complaints about Josh Tyler were the basis for her termination (id. ¶ 29).

Finally, plaintiff alleges that the verdict denying her claim for intentional infliction of emotional harm was against the weight of evidence (id. ¶ 30), stemming from the publication of the sexual harassment investigation of Daryl Brautigam, Esq., commissioned by the Town (id. ¶ 31). The report was released to the media two days before the Town's response to the EEOC charges with the report exonerating Ohnmeiss (id. ¶ 34). Plaintiff argues that defendants have attempted to try this case in the media (id. ¶ 35, Ex. A), arguing that the post-verdict statement by defense counsel to the media further inflicted emotional harm to plaintiff (id. ¶¶ 35, 36).

## DISCUSSION

I.      Rule 59 Standard

Rule 59(a) provides that a new trial may be granted to a party on any or all of the parts of the issues "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . .," Fed. R. Civ. P. 59(a), provided the motion is made within ten days of entry of judgment, id. R. 59(b). A motion for a new trial is governed by a more lenient standard than a motion for judgment as a matter of law under Rule 50, 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2531 (Civil 2d ed. 1995) (see Docket No. 135, Pl. Memo. at 2). To justify setting aside a special verdict and hold a new trial requires that the special verdict answers

be "ineluctably inconsistent," Tolbert v. Queens College, 242 F.3d 58, 74 (2d Cir. 2001).  The Court has a duty to harmonize the jury's answers to the special verdict, to preserve the parties' Seventh Amendment right to a jury trial by not disregarding any material jury finding, id.; Brooks v. Brattleboro Mem. Hosp., 958 F.2d 525, 529 (2d Cir. 1992).  However, "where the special verdict answers appear to be inconsistent but 'there is a view of the case that makes the jury's answer[s] . . . consistent, they must be resolved that way,'" Tolbert, supra, 242 F.3d at 74 (quoting Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962)).  As the Tolbert court states, "in seeking consistency, we bear in mind that the jury was entitled to believe some parts and disbelieve other parts of the testimony of any given witness," Tolbert, supra, 242 F.3d at 74 (citations omitted), holding there that the jury's interrogatory answers were consistent, id.

     Rule 59(e), however, states that "any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment," Fed. R. Civ. P. 59(e).  This portion of the rule does not set forth the standard for altering or amending a judgment, see 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1, at 124 (Civil 2d ed. 1995); see also id. § 2806, at 63, 74 (weight of the evidence).  Rule 59(e) applies to any motion seeking a substantive alteration of the judgment that is not merely a correction of a clerical error or is collateral to the judgment, 11 Wright, Miller & Kane, supra, § 2810.1, at 121.  The Court has considerable discretion in deciding this motion, id. at 124, however, reconsideration of an entered judgment is "an extraordinary remedy which should be used sparingly," id.  Commentators have noted four grounds for a Rule 59(e) motion, correction of manifest errors of law or fact upon which the judgment is based; admission of newly discovered

7

or previously unavailable evidence; prevention of manifest injustice; and alteration due to intervening change in the law, id. at 125-27 (see Docket No. 136, Pl. Atty. Decl. ¶ 15). Unlike a motion for judgment as a matter of law under Rule 50, the Court on a motion for a new trial to alter or amend the judgment may consider the credibility of witnesses and the weight of the evidence (see id. ¶ 13), the Court weighing the evidence for itself and not viewing it in the light most favoring any particular party (id. ¶ 14) and free to weigh the evidence for itself, 11 Wright, Miller & Kane, supra, § 2806, at 67. The Court must balance giving respect to the jury's findings (and respect the parties' Seventh Amendment right to trial by jury) with avoidance of miscarriage of justice and, after viewing all the evidence, the Court "is left with a definite and firm conviction that a mistake has been committed, it is to be expected that [it] will grant a new trial," id. at 74; see id. at 74-75.

II.     Rule 59(a) New Trial on Retaliation Charge and Special Verdict Question

Plaintiff first argues that the jury erred in answering "no" to question 17 of whether plaintiff was subject to an adverse employment action when her termination, as a matter of law, was such an adverse employment action. While plaintiff was terminated and termination is an adverse employment action as a matter of law, the factual issue here for the jury is one of the timing of that termination.

The factual issue posed in Jury Question 17 was the timing of the action relative to the filing of the EEOC Charge (Docket No. 139, Defs. Memo. at 4). One of the reasons that summary judgment was denied earlier in this action was because the questions of fact existed as to who was the appropriate appointing and (here more pertinently) terminating authority (see Docket No. 92, Order at 14) or, when was plaintiff terminated. In other words, was plaintiff

terminated on March 5, 2004 (effective March 19, 2004) when Chief Ohnmeiss told plaintiff that she was terminated, or on March 15, 2004, when the Town Board confirmed Ohnmeiss's decision?  There was unrefuted testimony that the Police Chief recommended appointment or termination of officers, which the Town Board uniformly ratified.  Ohnmeiss testified that, based on the advice of the town's attorney, Ohnmeiss as police chief had the power to terminate police department employees and the Town Board merely confirmed his decision (Docket No. 138, Defs. Atty. Decl. ¶ 4).  Defendant Town Supervisor Tyler confirmed Ohnmeiss's opinion, testifying that the Town Board merely confirmed the police chief's decisions (id. ¶ 5). The Town Board minutes from March 15, 2004, in fact resolve to "confirm" Ohnmeiss's decision and also note the Town attorney's opinion that the Chief did have authority to terminate an officer (Pl. Tr. Ex. 41).  There was no evidence of the Town Board acting independently of the Police Chief (be it defendant Ohnmeiss or his deceased predecessor) or acting against the recommendation of the Chief.  Thus, defendants conclude that the confirmation by the Town Board of Ohnmeiss's decision to terminate and its failure to reinstate plaintiff were not adverse employment actions (Docket No. 138, Defs. Atty. Decl. ¶ 6).

      Plaintiff alleges two reasons for retaliation that lead to her termination, first, in filing the EEOC charge and, second, for her First Amendment activities months before her termination, with the first basis applicable here for plaintiff to amend the judgment to retry her Title VII claim.  As for that first basis, the timing of her termination is crucial.  If Chief Ohnmeiss's action was not effective until the Town Board acted and then the Town Board confirmed in the face of pending EEOC charges, plaintiff stated a claim.  Although not briefed by the parties or included in the jury charge, New York Town Law invests in the Town Board the power to appoint town

police and the power to direct them, N.Y. Town L. §§ 20(1)(a), 39; see also id. § 64(5) (town board power to fill vacancies), (23) (general powers), and presumably the power to terminate, see also id. § 155 (power of town board to discipline town police, including terminating upon disciplinary proceedings); DiLauria v. Police Comm'rs of Town of Harrison, 285 A.D.2d 464, 727 N.Y.S.2d 355 (2d Dep't 2001). The New York Attorney General has opined that the town board may delegate to the police commissioners the authority to supervise the town's police department, 1985 Op. N.Y. Atty. Gen. (Inf.) 85-24, or (by local law) delegate the hiring, promotion, and disciping authority to the police chief, 1987 Op. N.Y. Atty. Gen. (Inf.) 87-62.

The jury's answers to Jury Question 17 can be harmonized and was consistent with other answers to the special verdict and to the evidence. It appears that the jury accepted Chief Ohnmeiss's action as the terminating event, having occurred prior to the EEOC charge (in fact that action lead to the filing of the EEOC charge). Plaintiff's initial EEOC charge alleged that she was terminated on March 5, 2004 (Pl. Tr. Ex. 14A, initial EEOC charge). The jurors believed that the Town Board's role was only to confirm the executive action of its police chief. Where there is a way to read the jury's answer to be consistent, the Court must resolve the facts that way, Tolbert, supra, 242 F.3d at 74. Thus, plaintiff's motion for relief under Rule 59(a) is **denied**.

III.     Rule 59(e) New Trial Grounds

Next, plaintiff seeks a new trial on three grounds under Rule 59(e) because she contends that the verdict on each of these issues was against the weight of the evidence.

A.     New Trial on Title VII and Human Rights Law Retaliation

First, plaintiff argues that the verdict denying her Title VII and state Human Rights Law retaliation claims were against the weight of the evidence, pointing to the timing of her EEOC charge, the Town Board's meeting, and the failure of the Town Board to grant her an (presumably private) interview or to allow her to speak at the Board meeting prior to their action.

Defendant argues that the prosecution declined to pursue cocaine possession charges against Josh Tyler due to defects in the search and seizure of the cocaine (Docket No. 138, Defs. Atty. Decl. ¶ 11; Docket No. 139, Defs. Memo. at 9). Absent substantial evidence to accompany plaintiff's attacks on credibility, defendants conclude that this Court should not disturb the jury's findings (Docket No. 139, Defs. Memo. at 8).

As discussed above as to the timing of plaintiff's termination relative to her EEOC charge, plaintiff filed her EEOC charge in between Chief Ohnmeiss's termination and the Town Board's confirmation meeting. Thus, the jury could find that she was terminated by Chief Ohnmeiss's declaration and that the Town Board's action merely ratified it. The Town Board (by a 2-3 vote) declined to reinstate plaintiff and place her on administrative leave while her EEOC charge was pending (Pl. Tr. Ex. 41, Town Board Res. #56-04).

As for allowing plaintiff to have an interview with the Town Board following the Chief's action, plaintiff introduced her letter requesting the interview with the Town Board (Pl. Tr. Ex. 14A). The jury heard Patrick Tyler's testimony that he offered to plaintiff and her counsel an opportunity to make a statement during the open meeting portion of the Town Board meeting. The jury also heard the excerpt from the Town Board session of March 15, 2004, where Tyler told the Board and the members of the public present of the opportunity for public comment to

the Board and on executive session (see Pl. Tr. Ex. 41, audio CD of Mar. 15, 2004, Town Board proceedings). Plaintiff expected a private audience with the Town Board but instead was treated like other members of the public and allowed a moment to provide comments to the Board, which plaintiff (nor her counsel) did not accept (or even raise a protest as to the insufficiency of appearing with the rest of the public). As for her claim surrounding the handling of the Josh Tyler prosecution and her subsequent treatment, the jury had sufficient evidence to find that these two events were not connected, as discussed below regarding her First Amendment retaliation claim. Therefore, plaintiff's motion on this ground is **denied**.

      B.      New Trial on First Amendment Retaliation

Plaintiff next argues that the weight of the evidence supports her claim that she was terminated in retaliation for her questioning the decision not to charge Josh Tyler, the son of the Town Supervisor, with cocaine possession, one week before Supervisor Patrick Tyler's re-election. Plaintiff, however, is making conjecture about the timing of this prosecution (beginning with Josh Tyler's arrest in late October 2003) and her termination (in March 2004) and reason for that termination relative to Josh Tyler's arrest. Viewing the evidence, the Court finds that there is no connection between plaintiff's statements about the treatment of Josh Tyler's offenses and her termination. Plaintiff challenged prosecutorial decisions to the Police Chief who did not have the final say as to what offenses Josh Tyler would be with and how (and whether) those charges would be prosecuted. There is not a firm and definite conviction here that the jury made a mistake in denying this claim. Therefore, plaintiff's motion on this ground is **denied**.

C.  New Trial for Intentional Infliction of Emotional Harm

Plaintiff argues that defense counsel's post-verdict press statements, relying upon a partially excluded evidence of defendant's commissioned internal investigation, were intended to inflict emotional harm to plaintiff. These statements were rendered out of court after the jury rendered its verdict and thus had no impact on the jury or the conduct of the trial. These statements did not form the basis for the jury's deliberation. At most, these out-of-court statements are merely the post-trial opinion of defense counsel summarizing what he believed the testimony was during the trial and are not actionable. Furthermore, plaintiff (when she amended her Complaint) dropped her express claim for intentional infliction of emotional harm (compare Docket No. 1, Compl. ¶¶ 93-97 with Docket No. 17, Am. Compl.) and the claim in the original Complaint stemmed from the Town and other defendants failing to take adequate remedial measures against Chief Ohnmeiss's alleged harassment (Docket No. 1, Compl. ¶ 94), without any reference to the post-termination investigation or release of the report from that investigation (compare Docket No. 1, Compl. ¶¶ 66-67 with Docket No. 17, Am. Compl. ¶¶ 78-79). The special verdict interrogatory asked the jurors about plaintiff's claim for intentional infliction of emotional distress from Chief Ohnmeiss (Docket No. 132, question 12[2]) and did not inquire about the dissemination of the Brautigam report.

On the release of the Brautigam report causing plaintiff intentional infliction of emotional harm, defendants argued that two Town Board members, defendant Tyler and William Geisler, concluded that the report should be released to the public, prior to knowing its contents, because it was paid for by town taxpayers (Docket No. 138, Defs. Atty. Decl. ¶¶ 14, 15; see Docket

---

[2]Answered "no" by the jury.

No. 139, Defs. Memo. at 10), without intending to harm anyone. Defendants also note that plaintiff introduced the report (as redacted) into evidence at trial as part of her case in chief (Docket No. 138, Defs. Atty. Decl. ¶ 18; see Tr. Ex. 13A). Plaintiff now argues that the Brautigam report and defense counsel's post-verdict discussion of it are inflicting emotional harm to her. She introduced as trial exhibits three May 2004 news articles which reported that her claims were unfounded (Pl. Tr. Exs. 43-45). Those items, however, are not actionable here.

Brautigam was retained as independent counsel for the Town to investigate plaintiff's EEOC charges, as Tyler stated during the Town Board meeting, due to the seriousness of her contentions (see Pl. Tr. Ex. 41, audio CD of Mar. 15, 2004, Town Board proceedings). As a defense generated document, the jury considered the appropriate weight to give it in assessing plaintiff's claims.

Therefore, as to this claim, plaintiff's motion for a new trial is **denied**.

## CONCLUSION

For the reasons stated above, plaintiff's motion for a new trial (Docket No. 134), is **denied**.

So Ordered.

*/s/ Hugh B. Scott*
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
June 18, 2007